Dickman, J.
In resisting the enforcement of the assessment in dispute, it is urged by the owners of the abutting property, that no estimate of the cost of the improvement, such as the law contemplates, was made and transmitted to the city council with the resolution or ordinance to improve ; and that consequently the municipality did not acquire jurisdiction to prosecute the work. The facts connected with this branch of the case seem not to be contested. A plan of sewerage for the district known and designated as Sewer Division No. 8, was approved by the city outhorities, and afterwards finally adopted April 28, 1878. The plan had previously been prepared by the *418 assistant engineer in charge of sewers, who, in submitting it to the chief engineer, embodied with it an estimate, as he regarded it, of the cost and expenses of the improvement. The assistant engineer estimated the total cost of the proposed sewers at the gross sum of about $80,000; and on the basis of such estimate, officially reported that the sewers could be constructed without cost to the city. The plan with the included estimate being approved by the chief engineer, it was by him submitted to the board of public works, which body adopted the same, and placed it on file — the estimate being thus explanatory of, and virtually a component part of the plan. The plan of sewerage being determined on, the board of city commissioners, the successor of the board of public works, in May, 1879, transmitted to the council and recommended for adoption, a resolution to- improve the designated streets and alleys according to the> plan on file ; and as set forth in the estimate accompanying the plan, reported to the council that the expense to the city would be none. The resolution, and an ordinance to construct the proposed sewers in accordance with the plan of the Eighth Sewerage Division, were thereupon properly adopted, and the improvement was made.
It is provided that in the building of sewers, the council may direct an estimate of the cost and expenses of constructing the work to be made. The special and controlling provision for such an estimate is found in section 2377, under the the subdivision of the Revised Statutes relating to sewers and assessments therefor, and reads as follows; “ After the plan of sewerage for the corporation, or any part thereof, has been approved by the board, and filed in the manner above pi'Ovided, the council may direct the engineer of the corporation, or sewerage engineer, as the case may be, to make an estimate of the cost and expenses of constructing the work, according to such plan, and report to the council what portion of the same will be required for main sewerage, and what portion for local sewerage, for any lots and lands to which any portion of such main sewer may serve as local sewer.”
The board referred to in this section, is, by a subsequent section, made to embrace the board of city commissioners in Cin *419 cinnati, or cities of the first grade of. the first class; and the question arises, whether in the case at bar, there has been a failure to fully meet the requirement of the statute as to making an estimate, whereby the assessment under consideration became necessarily void. The council did not direct the engineer of the corporation or sewerage engineer to submit an estimate; but through the estimate that accompanied the plan of sewerage, the council was put in possession of the required information. For the purpose in hand, the object of an estimate was attained. The cost of the work was not, it is true, estimated in detail, and was furnished only in gross; but the council was informed that the city would be put to no expense by the improvement • that the entire cost would be about a certain specified sum, and would not exceed the amount that might be collected by assessment, or $2 per foot front of the abutting land. The rates fixed by the contract awarded showed the estimate to be accurate and within bounds, and based upon prices of labor and material unusually fair and reasonable. The estimate at the time it was prepared and submitted, was no doubt deemed adequate under the law; and although not sufficiently full and complete to be unexceptionable, we do not think it was so defective as to invalidate the assessment. The defect was not of that substantial character as to place it beyond the curative provisions of the Revised Statutes as embodied in section 2289 and section 2327. Those sections provide as follows :
“ Section 2289. In every such action (to enforce an assessment lien) the court shall disregard any technical irregularity or defect, whether in the proceedings of the board of improvements, or of the council, or of any officer of the corporation, or in the plans or estimates; and the acceptance of the work by the council on the certificate of the engineer, shall be presumptive evidence that the contract has been complied with, but a substantial defect in the construction of the improvement shall be a complete defense.
“ Section 2327. Proceedings with respect to improvements, shall be liberally construed by the councils and courts, to secure a speedy completion of the work at reasonable cost, and *420 the speedy collectioon of the assessment after the time has elapsed for its payment, and merely formal objections shall be disregarded; but the proceedings shall be strictly construed in favor of the owner of the property assessed or injured, as to the limitations on assessment of” private property, and compensation for damages sustained.”
The evident intent of these two sections is, that where the contract has been complied with, and the work accepted by the council; where there is no defect in the construction of the improvement; where the work has been completed at reasonable cost; where strict regard has been paid to the limitation on assessments on private property, any technical irregularity or defect in the plans or estimates, shall not avail to prevent the speedy collection of the assessment when due. Not only are merely formal objections to be disregarded, but the proceedings with respect to public improvements are to be liberally construed by the courts, and when the property-owner has received no injury from the improvement, but has been specially benefited thereby, he shall not be permitted, because of an unsubstantial defect, to evade payment of his proportion of the assessment.
It is furthermore contended that the assessment was premature and unauthorized, because all the streets had not been underlaid with sewers prior to the assessment; that Butler street from Third to Fifth street, and Seventh street from Scott alley to Culvert street, although included in the declaratory resolution, and in the ordinance ordering the improvement, were not provided with sewers, and that therefore the assessment was illegal and void. These two streets had never been graded to the established grade, and grading was necessary to support the sewers to be constructed therein; but the ordinance, which could not by law contain more than one subject clearly expressed, related solely to the construction of the sewers. Under that ordinance, no contract could be entered into except for the improvement according to the plan adopted. The streets, accordingly, in which grading was necessary before sewers could be built therein, were not included ki the contract with Kirchner & Ashman; and the property *421 abutting thereon, was not assessed for any part of the cost of the improvement. But as far practicable, and as far as authorized by law, the plan of sewerage was fully executed. Under the circumstances, we are not prepared to hold that the assessment was void, because the two streets were not improved by sewers.
The sewers designed for the two streets were laterals, draining only the streets in which they were to be laid. No other laterals or other sewers would drain into them; and their omission on those streets would not affect the drainage or construction of other laterals, or other drains or sewers embraced in the plan. The full benefit of the public improvement would inure to those property owners in the district who were assessed, independently of what might be done or omitted to be done as to the sewers in Butler and Seventh streets. The case of City of Cincinnati v. Cincinnati and Spring Grove Avenue Co., 26 Ohio St. 345, is not in conflict with these views. In that case, for the purpose of connecting two public thoroughfares, a street improvement was ordered, which was to be paid for by assessment on the owners of abutting property. After the work had been completed part of the way, it was suspended or abandoned, leaving part of the proposed street wholly unopened. The assessment for the work already done was deemed premature, because the stopping the work resulted in a failure to accomplish the substantial purposes intended by the improvement as ordered. But the opening of a street, in which all the owners of abutting property are inter-rested for purposes of travel and convenient access to their premises, is materially different from a sewer improvement, from which there is an omission of a lateral sewer which drains only abutting lots, and does not benefit or affect the drainage of other property in the same district.
But while the objections to which we have referred, may be insufficient to invalidate or prevent the enforcement of the assessment in controversy, the lots which, as it appears from the finding of facts, were provided with local drainage at the time the improvement was ordered and the assessment made, should, we think, be exempt from the assessment. The claim *422 for exemption is based upon a prohibitory clause of section 2380 of the Revised Statutes, which section is in the words following:
“ Section 2380. The assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands’; nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith; and the excess of the cost, over the assessment herein authorized, shall be paid out of the sewer fund of the corporation.”
The question for determination under the statute, is one of fact between the municipality and the owners of abutting property, viz.: whether certain lots or lands are so provided with proper local drainage, in the statutory sense, as to be exempt from the special assessment. The local drainage provided, which can be effective to exempt the property drained, must, of course, be of such a character as to satisfy the statute. An ordinary surface drainage will not be sufficient. The dimensions, the mode of construction, the material used, the location, the outlet, the sanitary conditions, and other considerations should be such, as would belong to a sewer or drain built substantially in conformity to the requirements of the statute. As illustrated in several of the cases growing out of this public improvement, lots drained by a wooden box drain, placed as a temporary expedient in anticipation of regular sewerage, or drained simply by flowage over the surface, are not supplied with local drainage as to be exempt from assessment.
The record discloses that nearly all the lots exempted from assessment, are connected by pipes or drains with a large sewer called “ Deer Creek Sewer,” built between thirty and forty feet below the surface of the ground, constructed more than forty years ago in the natural water course known as Deer Creek, and extending from a point north of the eighth sewerage division, and discharging into the Ohio River. The various pieces of property so connected, were never assessed by the city for the cost and expense of the pipes or drains, nor for the construction of any part of Deer Creek sewer. Neither *423 the pipes or drains, nor the sewer itself, have ever been adopted as part of the regular sewerage plan of the city; but Deer Creek sewer was constructed in parts, portions by the city, and portions by private persons, through their own property. It has been frequently repaired by the city, and frequently by private persons on private property. Certain streets and the adjacent territory have been drained into it, by means of sewer pipes which the city caused to be connected with it. It appears from the finding, that the lands connected with this well-known sewer, and certain other lands having connection with a trunk sewer in Eggleston avenue, were furnished with local drainage adequate to all the requirements of the statute. Indeed it is contended that the Deer Creek sewer is as permanent and efficient for drainage as the Eggleston avenue sewer, into which empty the sewers that are made the subject of the disputed assessment.
The exempted lots are part and parcel of lands which originally needed local drainage, but were provided therewith by utilizing the natural water course for sewerage purposes. That it was thus rendered available for such purposes, is a sufficient indication, that local drainage was needed by the lots connecting therewith. The statute manifestly contemplates two classes of lots or lands: 1st. Those which are so situated topographically, as to drain themselves by natural outlets into rivers or streams, or other receptacles; 2d. Those which, though from any cause they once required artificial local drainage, have been sufficiently provided therewith. 'Whén so provided, and the fact is so found, the statute in prohibitory language exempts the lots or lands from special assessment.
In order however to be provided with local drainage, within' the meaning of section 2380, we do not deem it essential, that the drainage must have been furnished, in all cases, under a regular sewerage system ordered by the city, and that abutting property must have been assessed for the cost and expenses, and the assessment paid by the owner. The language of the statute, that no lots or lands shall be assessed, “ that do not need local drainage or which are then provided therewith ” is general, and cannot be so restricted as to make the exemption or pro *424 hibition applicable only to drainage already paid for under a plan established by the municipality. Through what instrumentality the drainage must have been supplied, the statute is silent; but such drainage as would come up to a proper standard, must have been provided. To enact that lots shall be exempt from a special sewer assessment, after they have been in all respects provided with drainage and assessed for the same, and have paid the assessment under a regular system of sewerage established by ordinance, would seem to be an unnecessary statutory provision. And to give the language of the statute its due force and effect, it should not be limited, in its construction, to such local drainage only as had its origin in a system so established.
The foundation of special assessments for public improvements, is the special benefit derived by the owners of property, over and above the rest of the community. If the assessment-imposed is in excess of advantage received, to that extent, there is a contribution to the public use without compensation. As said by the court in Stewart v. Palmer, 74 N. Y. 189, “Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefitted by the improvements for which they are laid, and hence ought to bear the burden rather than property generally ; and if a law should authorize such assessments to be laid without reference to benefits, it would either take property for public good without compensation, or it would take property from one person for the benefit of another.” And in Chamberlain v. Cleveland, 34 Ohio St. 562, it is stated as a fundamental principle that, “ If a sum is exacted in any instance in excess of the value of the special benefits conferred, it is, as to such excess, in that instance, private property unjustly taken for public use without compensation to the owner.”
To prevent inequality and injustice in distributing the burdens of assessment, the constitution and statutes have provided limitations and safeguards. Nor in imposing those burdens, is a line of' separation to be drawn between sewers and surface improvements, whereby in the one case no reference shall be had to benefits received, though in the other case.they may be *425 considered. The statute enjoins, in general terms, that “ so far as practicable, regard must be had, in making special assessments, to the probable benefits to the property assessed” (sec-2283 of the Revised Statutes.) Section 2379 and Section 2381 of the Revised Statutes provide for an assessment of the cost of main sewers and of local sewerage, by the feet front, or according to valuation upon the the tax list, or in proportion to benefits, thus implying the existence of the benefits as a necessary antecedent to a choice of modes in making the assessment. And in construing the statutory provisions with respect to improvements, it is enacted in language cited supra, “ the proceedings shall be strictly construed in favor of the owner of the property assessed as to the limitations on assessment of private property.”
Applying these rules and principles to the case under consideration, it may well be inquired, how far are the lots or lands connected with the Deer Creek sewer or the trunk sewer in Eggleston avenue, specially benefitted by the sewers that are the subject of the disputed assessment. If those lots are so provided with local drainage, that they receive no special benefits from the improvement, shall they, notwithstanding, be assessed because such drainage was not supplied under a regular plan of sewerage, originated and perfected by the city authorities ? The mere levying of an assessment for the sewers, cannot be held as conclusive evidence of benefit received by property owners. When it is settled as a fact, that lands are already provided with local drainage as contemplated by the statute, it becomes evident that the property will derive no special benefit from the improvement, and should not be subjected to the burden of assessment. If, however, the property cannot be brought within the purview of the statutory exemption or prohibition, by having been provided with the requisite local drainage, it may be presumed that it is specially benefited by the new improvement, and the assessment may be levied according to the rule prescribed by statute.

Judgments affirmed.